# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
**No. 24-1319V**

|  |  |
|---|---|
| ANN HEIDEN,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br><br>Filed: April 10, 2026 |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Jeremy Mauritzen, U.S. Department of Justice, Washington, DC, for Respondent.*

### <u>FACT RULING ON ONSET</u>[1]

On August 27, 2024, Ann Heiden filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on October 10, 2022. *See* Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find it more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, as alleged.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I.    Relevant Procedural History

Though the parties made a tentative effort to settle this claim, they were ultimately unsuccessful. ECF Nos. 13-14, 17, 19. Respondent filed his Rule 4(c) Report on August 18, 2025, arguing that the medical records do not preponderantly establish the alleged injury began within 48 hours of the subject vaccination, as required for a Table SIRVA. *Id.* at 6 (internal citations omitted). Petitioner has not filed any documents in response. The issue of onset is ripe for resolution.

## II.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

2

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III.    Relevant Factual Evidence

I make this finding of fact after a complete review of the record, including all medical records, declarations, and additional evidence filed. I emphasize the following:

- Petitioner received the subject flu vaccine in her left deltoid on October 10, 2022, through the employee health department at the local hospital where she worked. Ex. 1 at 1.

- On December 14, 2022 (approximately nine weeks post vaccination), Petitioner saw a pain management specialist for left shoulder pain. Ex. 2 at 134. She reported her "left upper arm pain . . . started on 10/11/22 after getting a flu shot into the left arm." *Id.* at 135. Petitioner explained that "[t]he day of the procedure, she noted that pain was more significant during the flu shot then [sic] previously in past" and "[t]he day after starting [sic] noticing achiness in the left upper lateral arm which then progressed into sharp stabbing . . . with certain movements." *Id.* Petitioner also described "'zingers' starting from the area of the lateral upper arm and radiating into the left elbow[.]" *Id.*

- A physical examination performed during this visit showed tenderness to palpation over the left deltoid and triceps, plus pain with range of motion ("ROM"). Ex. 2 at 138. The treater assessed Petitioner with tendinopathy of the left upper extremity, neuralgia, and myalgia ("other site[,]" unspecified). *Id.* at 139. The treater described Petitioner's injury and noted "left upper arm

3

pain status post flu injection on 10/11/22." *Id.* And, the treater opined that Petitioner's "[s]ymptoms seem to be related to possible trauma induced tendinitis/myofascial inflammation vs. neuritis of axillary posterior circumflex humeral, superior lateral cutaneous nerve of the arm or possibly radial nerve. Etiology still elusive." *Id.* The treater prescribed a Medrol Dosepak and encouraged Petitioner to stretch. *Id.*

- Petitioner returned to her pain management specialist on January 4, 2023, reporting a slight improvement in her left shoulder pain following medication. Ex. 2 at 148. She noted ongoing pain with ROM, a "ping" with severe pain, and difficulties sleeping on her left side; she rated her pain at a 2/10 at best but 10/10 intermittently. *Id.* An examination was consistent with tenderness over the left deltoid. *Id.* at 150. The treater's impression remained unchanged but now included SIRVA, specifically.[3] *Id.* at 150-51.

- On January 6, 2023, Petitioner filled out a "first report of injury or disease" form in connection with her worker's compensation claim. Ex. 7 at 51. She noted her injury date as "10-10-22" at "9:00AM" when she "got flu shot in left arm." *Id.* She reported that her "pain developed at injection site and has persisted intermittently since." *Id.*

- Petitioner sought care with an orthopedist on February 8, 2023. Ex. 5 at 9. She stated that "[o]n 10/10/2022 she received her flu vaccine at the [hospital] where she works. She experienced immediate pain following this injection and has been struggling with symptoms since." *Id.* Petitioner explained that she "thought her symptoms would improve on their own so she did not officially report this until December [2022] when her pain began to significantly worsen." *Id.* She also complained of loss of ROM, which was confirmed by her treater upon examination. *Id.* at 9-10. The orthopedist assessed Petitioner with left shoulder adhesive capsulitis "secondary to work-related flu vaccine administration on 10/10/2022[,]" and administered Petitioner a steroid injection. *Id.* at 10.

- The following week (on February 14, 2023), Petitioner attended her physical therapy ("PT") evaluation. Ex. 2 at 185. Petitioner reported that "after she received her flu shot on 10/10/22, she developed pain and stiffness and weakness and has eventually been diagnosed with adhesive capsulitis." *Id.* at 186. She complained of ongoing pain with reaching backwards,

---

[3] More so, during a February 1, 2023 pain management follow-up visit to review the results of EMG studies, the treater encouraged Petitioner to "research SIRVA experts[.]" Ex. 2 at 178. The EMG was normal. Ex. 2 at 172-73; Ex. 4 at 3.

overhead, and lifting; she noted she "has not been exercising the left shoulder, but is active with yoga/pilates." *Id.* She rated her pain at an 8/10 with activity. *Id.* Petitioner attended 14 PT sessions (through April 12, 2023).

- In pursuit of her worker's compensation claim, Petitioner's file contains a note (dated February 17, 2023). Ex. 7 at 13. The note states that it "seem[ed] odd" to Petitioner's employer that she "didn't report this timely" because "[i]f a nerve was hit with the shot, it would have been excruciating and instant pain" and she is "claiming pain developed over time[.]" *Id.* The employer stated that the vaccine administrator was "very experienced" and administers vaccines on a daily basis; it would therefore be unlikely for the administrator to have made a mistake. *Id.* The employer thus sought Petitioner's charts to "make sure treatment is related and appropriate for the mechanism of injury."[4] *Id.*

- On April 7, 2023,[5] Petitioner followed up with her orthopedist and reported "doing much better" following treatment with PT. Ex. 5 at 13. The orthopedist noted Petitioner "ha[d] no concerns." *Id.* An examination showed limited passive ROM, mildly reduced strength due to pain, and tenderness over the acromioclavicular ("AC") joint. *Id.* The orthopedist recommended ongoing stretching. *Id.* at 14.

- Petitioner had an orthopedic follow-up visit on June 2, 2023. Ex. 7 at 202. She complained of "worsening stiffness and pain" of her left shoulder, which the treater noted began "following a flu vaccine." *Id.* The orthopedist wrote that while Petitioner "did extremely well with [treatment] initially, she has regressed over the past couple of weeks." *Id.* The treater maintained the assessment of SIRVA and administered Petitioner a repeat steroid injection. *Id.* at 203.

- Petitioner's care thereafter included additional orthopedic follow-up visits throughout October 2023, and an MRI with mild findings.[6] *See,* e.g., Ex. 8 at 3-4, 27. While her orthopedist opined that Petitioner ultimately was a candidate for arthroscopic capsular release (*see id.* at 4), Petitioner did not undergo surgery. By late October, with new complaints of "searing, stabbing

---

[4] Ultimately, Petitioner's worker's compensation claim was rejected without recovery for her alleged injury. Ex. 7 at 3-4.

[5] Notably, Petitioner appears to have retained counsel to initiate the instant claim on April 5, 2023 – thus two days prior to this visit. Ex. 2 at 7.

[6] The MRI showed mild AC joint degenerative changes and trace glenohumeral joint effusion. Ex. 8 at 27.

on [her] shoulder blade" and constant throbbing and aching down to the elbow and into the hand, the orthopedist recommended a cervical spine workup. *Id.* at 12-13.

- On February 9, 2024, Petitioner sought care with a neurologist and pain specialists for continued shoulder pain and decreased ROM. Ex. 9 at 8. She reported her belief that she was "experiencing SIRVA after vaccine administration while receiving an influenza vaccine at work almost 2 years ago." *Id.* She endorsed pain since the time of vaccination. *Id.* The treater assessed Petitioner with frozen shoulder, neuralgia and neuritis, and (unrelated) tension headaches. *Id.* at 9. Petitioner received prolotherapy injections into the left shoulder through January 2025. *See id.* at 5-6; *see also* Ex. 12 at 6-20.

- Petitioner has filed a signed declaration in support of her claim. Petitioner recalls her October 10, 2022 vaccination hurting "more than you would expect one to hurt, and the next day, the pain intensified to a sharp, knife-like stabbing combined with a constant throbbing." Ex. 10 ¶ 1.

- No other medical record or declaration evidence regarding the onset of Petitioner's post-vaccination shoulder injury has been filed.

## IV. Finding of Fact Regarding Onset

A petitioner alleging a SIRVA claim must show that she experienced the first symptom or onset of pain within 48 hours of vaccination. 42 C.F.R. § 100.3(a)(XIV)(B); 42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria). As noted, Respondent contends that Petitioner cannot establish this criterion because she delayed seeking care for over two months post vaccination, and because when she reported her injury to her worker's compensation administrator she stated her pain had "developed over time." Rule 4(c) Report at 6 (citing Ex. 2 at 133; Ex. 7 at 13). And, while she reported intermittent pain rated at a severe level of 10/10, she did not seek treatment for months and continued to engage in "rigorous activities," including yoga. *Id.* (citing Ex. 2 at 133). Respondent thus argues that the only record support for Petitioner's onset contentions comes from her word alone, and is otherwise unsupported by the records. *Id.*

The totality of the evidence favors Petitioner's onset contentions. The aforementioned medical records establish that Petitioner consistently reported to treaters an onset close-in-time to vaccination, and that she indeed was experiencing symptoms in the relevant timeframe.

The additional fact that Petitioner sought treatment within two months of the subject vaccination (on December 14, 2022), actually somewhat helps Petitioner in establishing Table-consistent onset. In other cases, even *much greater* delays have not undermined an otherwise-preponderantly-established onset showing consistent with the Table. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs*., No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs*., No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury). The delay here is not nearly as long.

In addition, some delay in seeking treatment itself is never *per se* evidence of a non-conforming onset. As I have previously noted, SIRVA petitioners often put off seeking shoulder-related care based on the reasonable assumption that the pain is normal and will resolve on its own over time, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain. This appears to have been (at least partially) the case here, with Petitioner explaining that she "thought her symptoms would improve on their own so she did not officially report this until December [2022] when her pain began to significantly worsen." Ex. 5 at 9.

Also supporting onset is the fact that Petitioner affirmatively and repeatedly linked her shoulder pain to the subject flu vaccine – beginning with the December 14, 2022 treatment encounter, at which time she reported pain in the left shoulder pain that "started on 10/11/22 after getting a flu shot into the left arm." Ex. 2 at 134-35. She specifically placed onset as beginning the day after vaccination (at the latest), by explaining further that "[t]he day after" the vaccination, she began "noticing achiness in the left upper lateral arm which then progressed into sharp stabbing . . . with certain movements." *See id.* This entry thus provides strong support for a showing of two-day onset consistent with the Table.

More so, subsequent medical records consistently corroborate this entry with the same level of detail, and thus bolster Petitioner's ability to establish Table-consistent onset. *See,* e.g., Ex. 7 at 51 (a January 6, 2023 report made in pursuit of Petitioner's worker's compensation claim, that her injury occurred on "10-10-22" when she "got flu shot in left arm."); Ex. 5 at 9 (a February 8, 2023 orthopedic report that her injury began "[o]n 10/10/2022 [when] she received her flu vaccine . . . . She experienced immediate pain following this injection and has been struggling with symptoms since."); Ex. 2 at 185-86 (a February 14, 2023 PT report of pain beginning "after she received her flu shot on 10/10/22[.]"). These records, taken together, provide preponderant support in favor of an

onset that occurred extremely close in time to vaccination and not an injury that "developed over time" as Respondent contends (Rule 4(c) Report at 6). To rule otherwise, the record would need to contain instances of contrary reporting, or that describing an onset that occurred later than two days after vaccination. But such evidence is lacking in this case.

### Conclusion

Petitioner has provided preponderant evidence that the onset of her shoulder pain occurred within 48 hours of vaccination.

I encourage the parties to make a final re-attempt at informal resolution (of settlement or damages). **Respondent shall file, by no later than <u>Monday, May 11, 2026</u>**, a status report concerning how he intends to proceed, including, if appropriate, whether he would like to file an amended Rule 4(c) Report or whether he is otherwise willing to entertain a renewed settlement demand from Petitioner.

In the event Respondent is open to informal resolution of either settlement or damages, and to aid in those discussions, the parties should keep in mind that the record supports a moderate injury overall, requiring fairly conservative treatment for a limited duration. Petitioner participated in 14 PT sessions, received two steroid injections, did not undergo surgery; and by October 2023, she began reporting a new constellation of symptoms that required treatment with a neurologist (at least partially), and her diagnoses after that time included neuralgia and neuritis – thus somewhat inconsistent with a typical SIRVA. *See,* e.g., Ex. 5 at 9-10; Ex. 7 at 202-03; Ex. 8 at 12-13; Ex. 9 at 9. Petitioner should thus not expect more than a modest award, even at full value of this case.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master